UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

PAUL WEATHER,

                      Plaintiff(s)

-against-

CITY OF MOUNT VERNON AND SERGEANT
MICHAEL MARCUCILLI IN HIS INDIVIDUAL
AND OFFICIAL CAPACITY,
                Defendant(s).

------------------------------------------------------------x

08 CIV 0192 (RPP)

JUDGE PATTERSON

## MEMORANDUM OF LAW
## QUALIFIED IMMUNITY

Francis X. Young
Young & Bartlett, LLP
Attorney for Plaintiff
81 Main Street, Suite 118
White Plains, New York 10601

By: Francis X. Young (8205)

It is well-settled that the question of whether a given application of force against persons at liberty is unconstitutional are judged under the Fourth Amendment's objective reasonableness standard. See Graham v. Connor, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). A plaintiff must establish evidence that any given use of force constituted a "seizure" of his person. See, e.g., Acevedo v. Canterbury. (7th Cir. 2006). It is well-settled that excessive force cases typically raise questions of fact regarding whether a particular use of force was reasonable which should be resolved by a jury. Mazzariello v. Town of Cheektowaga, 305 A.D.2d 1118 (2003); Harvey v. Brandt, 254 A.D.2d 718 (1998)).

Determining whether the force used in a given instance is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion of the seized person's Fourth Amendment interest's, against the countervailing governmental interests at stake. The test of reasonableness is a "totality of the circumstances inquiry" that requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Garner, 490 U.S. at 396.

Moreover, it follows from the balancing test that in some circumstances no use of force is permitted because none is required. See Bauer v. Norris, 713 F.2d 408 (8th Cir. 1983)(holding that any use of force was excessive where plaintiff did not physically resist or physically threaten officer).

Finally where the governmental interests in using force are weak or nonexistent, even a slight injury may be sufficient to establish a Fourth Amendment violation. See Holmes v. Village of Hoffman Estate, 511 F.3d 673 (7th Cir. 2007)(even though plaintiff suffered only

minor injuries, excessive force claim not precluded); Calamia v. City of New York, 879 F.2d 1025 (2d Cir. 1989)(tight handcuffs kept on several hours amounts to excessive force); Lambert v. City of Dumas, 187 F.3d 931 (8th Cir. 1999)("actual injury", not serious injury is all that is required—small cut on eye and scrapes of knee and leg, sufficient); Goff v. Bise, 173 F.3d 1068 (8th Cir. 1999)(torn rotator cuff sufficient).

While it is true that where the use of force is itself is truly de minimus there may be no cause of action, an officer liable for the use of excessive force, is liable for all injuries proximately caused by the force. Figuerora-Torres v. Toledo-Davila, 232 F.3d 270 (1st Cir. 2000)("eggshell-skull" doctrine properly applied in a § 1983 claim).

The plaintiff produced three treating providers to testify as to his damages.

Plaintiff's doctors Sergai N. Delamora, M.D. (Orthopedist) and Satish R. Modugu, M.D.(Pain Management) collectively testified that as a result of Officers Marcucilli's manipulation of the plaintiff's arm behind his back together with shoving him into a brick wall plaintiff sustained a clavicle fracture to his right shoulder and also significantly exacerbated prior injuries in the right shoulder and caused significant injuries to the plaintiff's left shoulder. These injuries include a rotator cuff tear and a slap tear. With the exception of the broken bone, the injuries are permanent.

Doctor Delamora described how the clavicle bone is very strong and would not break absent the application of significant force to the bone.

Plaintiff also produced Matthew Mariani, a licensed Occupational Therapist to testify that at the time of the assault by Officer Marcucilli, Mr. Weather was under his care for prior injuries. Mr. Mariani testified that as a result of the assault by Officer Marcucilli, the plaintiff, Mr. Weather, suffered new injuries and had a significant setback in his rehabilitation.

The defendants produced Martin Barschi M.D. (Orthopedist) who testified after the conclusion of Plaintiff's medical evidence.

Mr. Barschi did not contradict one word of the testimony from Doctor Delamora, Doctor Modugu or Mr. Mariani. The conclusions and opinions of plaintiffs' medical providers were not challenged.

In Brosseau v. Haugen, 543 U.S. 194, 125 S.Ct. 596 (2004), the U.S. Supreme Court, reiterated the contours and purposes of the qualified immunity defense.

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted. Saucier v. Katz, 533 U.S., at 206, 121 S.Ct. 2151 (qualified immunity operates "to protect officers from the sometimes 'hazy border between excessive and acceptable force' "). Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.
> It is important to emphasize that this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*, at 201, 121 S.Ct. 2151.

Brosseau, 543 U.S. at 599.

The U.S. Supreme Court has likewise stressed the legal nature of the issue of qualified immunity stating that "immunity ordinarily should be decided by the court long before trial." Hunter v. Bryant, 502 U.S. 224, 228 112 S. Ct. 534, 116 L.Ed. 2d 589 (1991)(per curiam).

More important, because of the legal nature of the inquiry on qualified immunity few cases should still have an issue of qualified immunity at the point of jury determination of liability. Indeed, the Second Circuit has emphasized the problem of giving the jury the qualified immunity issue in an excessive force case. See Stephenson v. Doe, 332 F. 3d 68, 72-73 (2d Cir. 2003) (reversing and remanding where trial judge gave both liability and qualified immunity to the jury; cautioning upon remand to use special interrogatories to resolve the factual disputes that

overlapped the two issues and then, based upon the jury's findings of fact, the trial court is to decide the qualified immunity issue.); see also Cowan ex rel. Estate of Coooper vl Breen, 352 F.3d 756 . 764 (2d Cir. 2003)(same and noting that interrogatories on the key factual disputes be presented to the jury even where those key disputes go both to the excessive force and qualified immunity questions—again leaving the qualified immunity issue for the court to ultimately decide).

No pre-trial qualified immunity motion was ever made. On the eve of trial, defendant raised the qualified immunity issue for the first time during a conference call.

Plaintiff's version of events raised triable issues of fact regarding not only whether the force used by defendant was objectively unreasonable, but also whether defendant is entitled to the defense of qualified immunity. See, e.g., Stipo v. Town of North Castle, 205 A.D.2d 608 [1994]). The factual disputes, inconsistencies and credibility determinations inherent in the parties' different versions of the events required any qualified immunity motions be made post-trial after all the proof was in and the factual disputes were resolved by special interrogatories. This is precisely what the Court did.

Only where the conduct of the defendant (as found by the jury) is such that a reasonably objective official would not have known it was unconstitutional would the immunity claim be valid. And only where a particular version of the facts would support a qualified immunity defense should such special interrogatories be given in the first instance. If those factual questions are resolved in plaintiff's favor, those "historical facts" are determinative of the qualified immunity defense, but it is the court's duty, not the jury's duty, to apply the law relating to qualified immunity according to those established "historical facts." See Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007).

Although the defense of qualified immunity is available to law enforcement in Federal Civil Rights claims it is not available in this case. Attached hereto is a copy of special interrogatories which were agreed upon by plaintiff and defense counsel and submitted to the jury which decided Mr. Weather's claims.

There were 8 separately numbered questions: 1, 2, 3, 4, 5, 5a, 6, 6a.

Of the 8 questions, 7 were resolved in the favor of the plaintiff and against the defendant with "no" answers.

Only number 3 was answered in the affirmative indicating that as to that question Officer Marcucilli acted properly. That question reads as follows:

> "3. Did defendant prove, by a preponderance of the evidence, that a reasonable police officer facing the circumstances confronting Sergeant Marcucilli would have believed that he had sufficient grounds to remove plaintiff from the area and direct him toward the wall, without making further inquiry?"

The balance of the questions were all answered negatively in a manner where the jury found that the defendant did not prove by a preponderance of the evidence the claims advanced by the City of Mount Vernon in their defense.

At trial defense counsel attempted to paint the scene as hectic, dangerous and overcrowded. This was not supported by the evidence.

Sergeant Marcucilli testified that several other Mount Vernon police officers were witnesses to the incident. However these witnesses were not produced at trial.

The trial did not produce any evidence that plaintiff did anything to justify any use of force never mind significant force causing a broken bone and permanent shoulder injuries.

Before Sergeant Marcucilli assaulted plaintiff, everyone at the scene was calm and well behaved. Plaintiff had just engaged in a very civil discourse with an unidentified Mount Vernon police officer inside the school and with security officer James Young.

Mr. Young testified that he saw Sergeant Marcucilli push plaintiff into a brick wall.

There was no evidence that split second decisions were made or were necessary. There was no security breach.

The only breach of the peace was occasioned by Sergeant Marcucilli and was unjustified.

In fact the jury found Sergeant Marcucilli's conduct so egregious that they awarded punitive damages in the amount of $25,000.00.

Based upon four days of trial, the jury verdict sheet, jury answers to interrogatories and the foregoing arguments it is submitted that qualified immunities is not warranted here.

Respectfully submitted,

Francis X. Young (8205)
Young & Bartlett, LLP
Attorney for Plaintiff
81 Main Street, Suite 118
White Plains, New York 10601
(914) 285-1500

## Special Interrogatories

If you find that the plaintiff has proven by a preponderance of the evidence that the defendant is liable for unreasonable excessive force that he applied to plaintiff, then you must answer the following special interrogatories. If you find that the plaintiff has not proven defendant's liability by a preponderance of the evidence on his excessive force claim, you need not answer these questions.

The defendant may be entitled to qualified immunity if the defense has shown by a preponderance of the evidence that, at the time of this incident, Sergeant Marcucilli reasonably believed that the amount of force that he used was reasonable under the facts and circumstances with which he was confronted at the time of the incident. The decision of whether Sergeant Marcucilli is entitled to qualified immunity is one for the Court to decide, based on certain findings of fact made by you, the jury. Please answer the questions below with regard to the requested factual findings. The answers to these questions must be unanimous.

1. Did defendant prove, by a preponderance of the evidence, that Sergeant Marcucilli saw, or was told, that plaintiff was attempting to enter the locked doors to the school?

   _____    _____
   YES      NO

2. Did defendant prove, by a preponderance of the evidence, that Sergeant Marcucilli heard, or was told, that plaintiff claimed he was an active Mount Vernon Police Officer?

   _____    _____
   YES      NO

3. Did defendant prove, by a preponderance of the evidence, that a reasonable police officer facing the circumstances confronting Sergeant Marcucilli would have believed that he had sufficient grounds to remove plaintiff from the area and direct him toward the wall, without making further inquiry?

   _____    _____
   YES      NO

4. Did defendant prove, by a preponderance of the evidence, that Sergeant Marcucilli's actions towards plaintiff were reasonable because there was a crowd surrounding Mr. Weather and the crowd was chanting "fuck the police"?

   _____    _____
   YES      NO

5. Did defendant prove, by a preponderance of the evidence, that Sergeant Marcucilli did not twist plaintiff's arm behind plaintiff's back?

_____    _____
YES          NO

If your answer to question 5 is "no," then please answer question 5.A. If your answer to question 5 is "yes," please move on to question 6.

   5.A. Did defendant prove, by a preponderance of the evidence, that a reasonable police officer facing the circumstances confronting Sergeant Marcucilli would have twisted plaintiff's arm behind plaintiff's back?

   _____    _____
   YES          NO

6. Did defendant prove, by a preponderance of the evidence, that Sergeant Marcucilli did not shove or push plaintiff forcefully into the brick wall outside the school's entrance?

_____    _____
YES          NO

If your answer to question 6 is "no," then please answer question 6.A. If your answer to question 6 is "yes," you need not answer question 6.A.

   6.A. Did defendant prove, by a preponderance of the evidence, that a reasonable police officer facing the circumstances confronting Sergeant Marcucilli would have shoved or pushed plaintiff forcefully into the brick wall outside the school's entrance?

   _____    _____
   YES          NO

_____                                    _____
FOREPERSON                                                                    DATE